# Southern District of New York

## HON. JOHN G. KOELTL

———

## UNITED STATES

### v.

## ANIK ROY

## 16 CR 00847(JGK)

———

## SENTENCING SUBMISSION

Labe M. Richman
Attorney for Defendant
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914
Labe@LabeRichman.com

AUSA Kyle Wirshba
One St. Andrews Plaza
New York, NY 10007
(212) 637-2493
Kyle.Wirshba@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

                                          DEFENDANT'S SENTENCING
                                          SUBMISSION

-against-

                                          INDICTMENT NO. 16 CR 847 (JGK)

ANIK ROY

-----------------------------------------------------X

       This memorandum with exhibits is submitted to the Court regarding the

defendant's sentencing scheduled for February 1, 2019.

       I. Introduction

       This Court has previously sentenced the defendant to the lowest Guidelines

sentence of six months in jail with three years of supervised release with a condition of

six months house arrest.  This sentence was vacated on the grounds that counsel did not

ask for one day less on either the house arrest or the jail sentence so that these convictions

would not be aggravated felonies under immigration law as theft offenses with a sentence

of a year or more. 8 U.S.C. § 1101(a)(43)(G).

       In addition to the normal sentencing arguments, we make two primary points in

this submission: (a) that because of mandatory immigration detention, defendant will do

an additional six months in jail which will make the six month penal sentence

unnecessary; and, (b) defendant will be extremely vulnerable in jail as a result of his very

small size and attractiveness.

I. Deportation and Mandatory Immigration Detention as Additional Punishment

As the Court knows from the evidentiary hearing on the §2255 application, defense counsel did not include immigration consequences in any of his sentencing submissions or in his principal oral presentation.  He failed to do so because he mistakenly believed that the Second Circuit did not allow it.

It was only after counsel was finished and the Court suggested the sentence which it ultimately imposed – that is, a Guidelines sentence of six months jail and six months house arrest – that counsel, in spite of his belief that he should not mention immigration, made a very brief comment on the issue, stating that defendant was guilty of an aggravated felony and "could" be deported.  Sentencing Transcript, p. 13. [1] The Court indicated in its §2255 decision that because the actual imposition of sentence occurred after this statement, that it had considered deportation in the final sentence. However, since Petrus spent so little time on the issue, and did not discuss the details of the effect of deportation on the client and the fact that he would be subject to a significant amount of mandatory detention in immigration jail, we believe that an in-depth discussion of the immigration issues, rather than one sentence toward the end of the proceedings, is extremely pertinent to the Court's final sentencing decision.

_____

[1] We believe that Petrus only believed it was an aggravated felony because he thought that it was a fraud offense with a loss of more than 10,000 dollars.  Our position has always been that, categorically, there is no element of fraud required in 18 U.S.C. §641 and that it is a theft offense.

The Second Circuit has specifically allowed the Court's consideration of

immigration consequences. In <u>United States v. Thavaraja</u>, 740 F.3d 253, 262-63 (2d Cir.

2014), the Court stated that

> [i]n determining what sentence is "sufficient, but not greater than
> necessary," to serve the needs of justice, 18 U.S.C. § 3553(a), a district
> court may take into account the uncertainties presented by the prospect of
> removal proceedings and the impact deportation will have on the defendant
> and his family.

<u>Id</u>. This makes sense because deportation can be "the most important part of the penalty"

facing an immigrant defendant. <u>Padilla v. Kentucky</u>, 130 S.Ct. at 1480. And, even more

recently in *Sessions v. Dimaya*, the Supreme Court reiterated the concept, noting that

deportation is a "particularly severe penalty" of "banishment" and "exile." <u>Sessions v.</u>

<u>Dimaya</u>, 138 S.Ct. 1204, 1213 (2018). [2]  In a recent New York Court of Appeals

decision, the Court emphasized that deportation is a penalty of the "utmost severity," in

part because of the prospect of additional detention (as we argue here).  <u>People v. Suazo</u>,

___ N.Y.3d ___ (2018), 2018 WL 6173962. [3]

---

[2] <u>See</u> <u>INS</u> v. <u>St. Cyr</u>, 533 U.S. at 321 ("'[p]reserving the clients' right to remain in the
United States may be more important to the client than any potential jail sentence.'")(citations
omitted); <u>Ng Fung Ho v. White</u>, 259 U.S. 276, 284 (1922) (deportation can result in a loss "of all
that makes life worth living").   The Court of Appeals of New York in <u>People v. Peque</u>, 22
N.Y.3d 168 (2014), stated that these consequences  have "tremendous importance, grave impact,
[and] frequent occurrence" and are "certain, pivotal and prevalent," constituting an  "enormous
penalty--" where someone is taken away from their family and the family loses its support, where
the defendant loses precious opportunity, "the blessings of liberty" and is saddled with a "harsh
superadded exaction," that is  "uniquely important," and is a "penalty more dreaded than prison."
<u>People v. Peque</u>, 22 N.Y.3d at 188-89, 192, 207-208.

[3] In *Suazo, supra,* the Court of Appeals found, in a historic decision, that deportation
consequences are so serious that a defendant has a right to a jury trial even where such a right

This defendant will face deportation proceedings because he is deportable for a crime of moral turpitude committed within five years of entry that has a maximum possible sentence of a year or more. 8 U.S.C. 1227(a)(2)(A)(i); <u>Aquino-Encarnacion v. INS</u>, 296 F.3d 56 (1st Cir. 2002); *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847 (BIA 2016). Theft offenses (unless only involving a temporary taking)[4] are crimes of moral turpitude. *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847 (BIA 2016).  The statute and indictment charged that defendant did "embezzle, steal, purloin, and knowingly convert to their own use . . . money [and] things of value of the United States" 18 U.S.C. § 641. This is clearly a theft offense which would be a crime of moral turpitude. *Diaz-Lizarrage, supra.*

Petitioner is deportable under 8 U.S.C. 1227(a)(2)(A)(I) because he had entered the country on May 8, 2008 and the two counts to which he pleaded guilty began in 2011 – a date three years after his entry and plainly within the five year period required by that deportation provision. <u>Id</u>.  Since this offense cuts off the accrual of seven years residence in the United States, the defendant is not eligible for the most-used remedy of

---

would normally not be available. <u>People v. Suazo</u>,___ N.Y.3d ___ (2018), 2018 WL 6173962. The Court noted that the severity of the deportation sanction existed because the defendant:

> may first face additional detention, followed by the often greater toll of separation from friends, family, home, and livelihood by actual forced removal from the country and return to a land to which that person may have no significant ties.

*Id.*

[4] *Compare, Matter of T-*, 2 I&N Dec. 22 (taking a ring just to wear it one night at a party is not a crime of moral turpitude). See, *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847, 853 (BIA 2016).

cancellation of removal.  INA § 240A(a), 8 USC §1229b.

Most importantly, not only will the defendant face deportation, but he will be subject to mandatory detention. The predicate facts which lead to mandatory detention in deportation proceedings are set forth in 8 USC § 1226(c). Lora v. Shanahan, 804 F.3d 601, 604-05 (2d Cir. 2015). In particular, §1226(c)(1)(A) prescribes mandatory detention for those who "are inadmissible by reason of having committed any offense covered in §1182(a)(2)" of Title 8. See, 8 U.S.C. § 1226(c)(1)(A).  One of the types of offenses listed in that section are crimes of moral turpitude.  See, 8 U.S.C. §1182(a)(2)(i)(I)(Crime of moral turpitude is an inadmissible offense).  Therefore, there is no argument that defendant will not be subject to mandatory detention when his deportation proceedings begin.

In the Second Circuit, after six months in mandatory detention, a deportee has a right to at least a bail hearing. Lora v. Shanahan, 804 F.3d 601, 604-05 (2d Cir. 2015). Of course, there is no guarantee that he would be given bail, but in any event, *Lora, supra,* makes clear that this defendant will be in mandatory detention for at least six months. Even if the defendant were lucky enough to someday receive some remedy, such as asylum, a 212(h) hardship waiver for a new green card, or withholding of removal, he would be in mandatory detention while these remedies were sought. And, as to withholding [INA 241(b)(3)], even when granted, an individual may possibly be kept in

detention. [5]

Therefore, if the Court were to impose something close to the prior sentence of six months in jail and six months of house arrest, the defendant will not be able to immediately serve the house arrest but will instead be placed in immigration jail to begin his deportation proceedings.  Whether or not the defendant is given jail by this Court, he will serve six months in immigration jail.  If six months in jail is the correct amount of incarceration, then a sentence of 364 days of house arrest would be an appropriate sentence because it would still involve six months of incarceration, albeit, immigration detention (which may be even more onerous). [6]

Furthermore, the risk of future deportation is particularly onerous for this defendant because he is Hindu being deported to Bangladesh, a Moslem country. Furthermore, the danger is exacerbated by his love relationship with a Moslem woman, Nafisha Syeda, who also supplied a declaration attached as Exhibit B. If the defendant can tie this danger to the government of Bangladesh, it might serve as a basis for withholding of removal. Under withholding of removal, he would still lose his green card, could never travel, and could be deported when country conditions change.

If he marries Nafisha and can show "extreme hardship" to her if he is deported, he

---

[5] There is an ICE policy against it but with the new administration, all such policies are in doubt.  See, Policy Memo, dated March 6, 2012, attached as Exhibit A.

[6] In federal custody on penal sentences, immigrants are also not eligible for certain programs and are kept in medium security prisons even though they are eligible for low security camps.

could also try adjust his status with a 212(h) waiver. 8 U.S.C. 1182(h)(1)(B). Obviously

"extreme" hardship is a tough burden. Therefore, the risk of actual deportation to

Bangladesh is high and the prospect of that is significant punishment for this case. [7]

III. Defendant's Vulnerability as a Result of Being Very Small

The Court is allowed to consider the "characteristics of the defendant" at the time

of sentencing which by definition includes physical characteristics. 18 U.S.C. §

3553(a)(1). The Court should also consider Guidelines Policy Statements [18 U.S.C. §

3553(a)(5)(A)] and on the issue of departures, the Guidelines allow consideration of a

defendant's physique. U.S.S.G. §5H1.4; [8] United States v. Lara, 905 F. 599 (2d Cir.

1990). Since, now, a departure is not necessary to impose a non-Guidelines sentence, the

Court, *a fortiori,* should be able to consider the defendant's physical appearance and

vulnerability when deciding the appropriate sentence under §3553(a).

This defendant is extremely thin and only weighs 115 pounds. He is only five feet

four inches tall. I agree with his girlfriend that the defendant is attractive. I would call

_____

[7] At the hearing on the §2255 motion, the AUSA argued the speculative nature of these
remedies, calling them a "wish list" which might not come true.

[8] U.S.S.G. §5H1.4 states that

Physical condition or appearance, including physique, may be relevant to
determining whether a departure is warranted, if the condition or appearance,
individually or in combination with other offender characteristics, is present to an
unusual degree and distinguishes the case from the typical case covered by the
guidelines.

*Id.* (emphasis added).

7

him cute or pretty.  Although I have had a client who was thin, or a client who was short, or a client who was pretty, I have never had a client who was all three.  Under oath, his girlfriend unsurprisingly states that defendant has been bullied in the past and he has been suicidal as a result. We realize that defendant has not been a victim of predators in jail as Mr. Lara (see, *U.S. v. Lara, supra*), he has not served any time yet so we have no specific examples of bullying or abuse in jail. But, simply looking at the defendant can lead one to think that he would be particularly susceptible to being bullied in jail or worse.

IV. Other Considerations and Conclusion

This defendant is unique in that he was able to experience a prior sentencing and had time to confront the reality of the horrendous immigration consequences during his §2255 process. He has been given a considerable amount of additional time which has allowed him to fully comprehend the seriousness of what he did, and he has taken stock of how he played a crucial part in creating this very negative predicament.  I have seen a significant change in his attitude since I first met him and I think he has grown considerably as a result of experiencing an actual sentencing and this litigation process with me. I attach a letter from the defendant as Exhibit C for the Court's consideration. This letter shows his understanding of how his actions caused his precarious situation. Ex. C.

The Court wanted this defendant to do six months in jail and that will occur without a six month penal sentence because he is subject to mandatory detention which,

in this case, will involve six months or more in immigration detention.  8 USC §§

§1226(c)(1)(A), §1182(a)(2)(i)(I); <u>Lora v. Shanahan</u>, 804 F.3d 601, 604-05 (2d Cir.

2015).

He is a first-offender who committed a non-violent crime and did not benefit as

much as the initiator of the scheme. He committed the offense when he was young and

poor; and, he has not been arrested for any new crime since his arrest, over three years

ago. Finally, his jail sentence, in penal custody or immigration custody will be extremely

harsh because of his extremely small size and vulnerability.  He has already faced the

stigma of this conviction which caused him to lose his taxi job and has kept him from

even moving to a new Domino's location for more hours.  That felony stigma will last

forever.

Based on all of these factors, we request a sentence of probation with a condition

of 364 days of house arrest. [I believe that the Court has the option of having the house

arrest run either consecutively or concurrently to any immigration custody.  By running it

consecutively, the Court obviously could increase the punitive nature of the sentence by

having at least six months of immigration custody with a full 364 days of house arrest ]. [9]

Respectfully submitted,

Labe M. Richman

---

[9] On the other hand, we ask that the probationary sentence run concurrent with any
immigration detention.  The Court should order that the defendant inform probation when he is
placed in immigration custody and that he report to a probation office within 72 hours if he is
released from immigration detention.

Attorney for Defendant
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914
Labe@LabeRichman.com